People of Porto Rico, Plaintiff and Appellee, *v.* Jenaro Bermúdez Larrauri, Defendant and Appellant.

No. 3702.    Argued February 28, 1929.—Decided June 28, 1929.

*Manuel A. Martínez Dávila, A. Porrata Doria* and *Luis F. Camacho* for the appellant.    *José E. Figueras* for the appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

Jenaro Bermúdez Larrauri was charged by the district attorney with the crime of murder in the second degree.    He pleaded not guilty and asked to be tried before a jury.    After trial the jury brought in a verdict of guilty of voluntary homicide and the court sentenced him to four years in the penitentiary at hard labor.

Bermúdez appealed to this court and assigns in his brief the commission of three errors.

The first is stated as follows:

"The court erred in ordering the drawing of an additional number of jurors without cause or justification, thus violating section 202 of the Code of Criminal Procedure."

Having examined the transcript in order to ascertain what really occurred, we find sufficient grounds for dismissing that assignment of error in the holding of this court in *People* v. *Juliá,* 25 P.R.R. 238, as follows:

"The regular jurors of the first panel were in attendance, but a number of them had been challenged by reason of their having taken part in a similar prosecution.    The court ordered another panel of twenty-four to be summoned and combined these with the eligible men of the first panel, so that there were more than thirty jurors

in attendance. *Held:* That this was not a violation of section 199 of the Code of Criminal Procedure, which limits the number of jurors to twenty-four, because the court has ample discretion under section 202 of the said code and the doctrine is well established that a greater number of jurors cannot prejudice the defendant; that similar statutes are merely directory, and that the courts will not reverse in the absence of a showing of prejudice.''

It is alleged in the third assignment that the verdict is contrary to the evidence.

We have examined the evidence introduced by both parties and although in many particulars it is vague, it is in our opinion sufficient. If the second error assigned had not been committed the judgment appealed from would be affirmed.

The then *fiscal* of this Supreme Court admits in his brief that the said second error assigned was committed and also admits that it is of such nature as to carry with it a reversal of the judgment appealed from. It is worded as follows:

"The court below erred in not allowing the defense to cross-examine witness Miguel Bermúdez on his economic relations with the accused in order to determine the motives or interest of his testimony.''

It appears from the record that during the testimony of witness Miguel Bermúdez, a son of the accused with whom the latter had a quarrel and at whom he fired the shots which killed Ramón Rodríguez, who was present there, a juror spoke as follows:

"Juror.—With leave of the court I want to ask a question. Q.—Prior to this, what were the relations between you and your father: were they cordial; had anything occurred previously to cause a rupture in the relations between yourself and your father? A.—Nothing.''

Counsel for the defense then attempted by means of cross-examination to establish the fact of animosity between the witness and his father, the accused. The district attorney objected and the court ordered the elimination of all of the answers of the witness in relation to the matter.

The defense insisted and the record shows that the following occurred:

"Judge.—In deciding the matter the court holds that as the witness has said that his relations with his father, who is the accused in this case, were cordial, that statement of the witness can not be contradicted by evidence tending to show reprehensible acts of the witness, unless these acts of the witness refer to felonies or convictions of felonies, wherefore the court holds that the questions asked by the defense about certain criminal acts committed by the witness are not admissible in evidence. The court, however, will allow the witness to be asked about any conviction for felony to impeach his veracity in regard to his relations with his father, as, for example, of having been convicted of forgery. Defense.—We have not asked him whether he has been convicted; but what we have asked the witness is in substance whether or not it is true that he has been charged with crime, without ascertaining the result, by his father, in order to show that they are not on good terms . . . . Judge.— What is the purpose then? Defense.—That is why I want to ask the questions so that the prosecution may object, the court may overrule them and I may take exception and have them go in the record. The witness will not answer the question until the judge rules thereon. My aim first in propounding the following questions is to furnish the ground for the impeachment of this witness showing that in stating to the jury that no incident had taken place between himself and his father causing a break between them he has lied. Q.—Is it or is it not true that you were accused by your father before the court upon a document which he said you had forged? A.—No, sir. Q.—Is it not true? District attorney.—The prosecution objects. Judge.—Objection sustained. Defense.—We take exception because we are seeking to impeach the veracity of this witness and the only way is to ask the question for him either to deny or to admit it. Q.—Is it or is it not true that on another occasion you were charged by him with taking some coffee from his farm? District Attorney.— The prosecution objects. Judge.—The court sustains the objection. Defense.—We take exception on the same ground as before. Q.— Is it or is it not true that you were charged with having threatened him and others with a machete? District attorney.—The prosecution objects. Judge.—Objection sustained. We take exception."

In paragraph 22 on page 405 of his work on Criminal Evidence Underhill says:

"The feelings, bias and relationship of the witness are never collateral. A witness may be interrogated on cross-examination as to his interest, bias or prejudice, that is to say, if the sole purpose of the question is to elucidate the existing or previous relationship, feeling or conduct of the witness toward the crime, the accused, or the prosecutors.

"The witness may be asked generally, if he has not expressed, or perhaps entertained feelings of hostility, or acted in an unfriendly manner towards or quarreled with the accused. So, for example, a prosecuting witness may be asked if he has not had the accused arrested before, or if he has not quarreled with the accused, and if he has not retained counsel to aid the state in the trial which is pending. He should be allowed to explain his motives in hiring counsel.

"If the witness refused to answer such questions, or answered them in the negative, the contrary fact may be shown by the evidence of others. But where a witness states that though once hostile he is so no longer, evidence of his previous hostility, being too remote, is irrelevant.

"On the cross-examination of a witness for the state it may properly be shown that he had come a long distance without a subpoena and that his railroad fare had been paid by the prosecution. The general rule is that where a witness on his direct examination shows a violent hatred towards the accused, or where he has been very active in securing evidence against him, the accused should be permitted the widest latitude on cross-examination."

In *People* v. *Alvarado,* 35 P.R.R. 257, in which the judgment was reversed, this court, by Mr. Justice Hutchison, expressed itself as follows:

"Sec. 21 of the Law of Evidence reads as follows:

" 'A witness is presumed to speak the truth. This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty, or integrity, or his motives, or by contradictory evidence.'

"Nieves seems to have referred to a previous quarrel. When referring to defendant he said that *'volvió a buscarme la garata.'* The other acts imputed to defendant by this witness and described on

direct examination also seem to point to some previous incident as the probable, if not the only, logical explanation of what would otherwise appear to be a most remarkable and abnormal course of conduct. The first question asked on cross-examination, therefore, would have been perfectly proper as within the scope of the direct examination without regard to the element of bias and the right of defendant to impeach the witness in the usual manner, if not indeed by the only method permissible.

"By the weight of authority the trial judge has some discretion in the matter of limiting such cross-examination and, we think, should keep the same within reasonable bounds. But we are not aware of any case that goes so far as to say that the defendant in a criminal case may be deprived of all opportunity to show the existence of an emotional basis for bias on the part of a prosecuting witness."

The question which witness Nieves was not allowed to answer in the Alvarado Case, *supra,* was: "Were you a friend of this man (the accused) or had you had any quarrel with him?" And in referring to such case the *fiscal* of this court said the following in his brief:

"It will be noticed by the court that the case we have cited refers to a misdemeanor and therefore that jurisprudence applies still more forcibly to the case under consideration, for it refers to felony before a jury, and if in the Alvarado case, *supra,* this court held that it was error not to allow the defense to ask the question in order to show the state of mind of the witness against the accused, it seems that in the present case where the same point is to be decided by a jury, for a better reason application may be made of the said jurisprudence which in our opinion is conclusive and settles the question in a manner which leaves no room for doubt, the more so since it appears from all the evidence in the present case that the relations between the accused and his son, the witness, were somewhat strained, and that the incident which brought about the death of Ramón Rodríguez arose from those circumstances."

We agree and consequently an error having been committed during the hearing of the evidence that might be prejudicial to the accused, the judgment appealed from must be reversed and a new trial ordered.